UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:12-CV-00119 JDW-MAP

LIFE WIN, INC., a Florida corporation; GET
MOTIVATED SEMINARS, INC., a Florida
corporation; and WEALTH MAGAZINE
INVESTOR EDUCATION LLC, a Florida
limited liability company

    Plaintiffs,

v.

BRIAN FORTE, an individual; TAKE ACTION
MEDIA, INC., a Florida corporation; and
TAMARA LOWE, an individual,

    Defendants.
                     /

### DEFENDANTS' BRIAN FORTE, TAKE ACTION MEDIA, INC., AND TAMARA LOWE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants, BRIAN FORTE ("**Forte**"), TAKE ACTION MEDIA, INC. ("**TAM**"), and TAMARA LOWE ("**Mrs. Lowe**")(collectively, "**Defendants**"), through undersigned counsel, and pursuant to Local Rule 4.06, Middle District of Florida, hereby file this Opposition to Plaintiffs' Motion for Preliminary Injunction and Incorporated Memorandum of Law.

### I. SUMMARY OF THE ARGUMENT

This Court should abstain from hearing this case and the Plaintiffs' Motion for Preliminary Injunction because of the pendency of a prior filed action in the Circuit Court in Palm Beach County which will decide the issues pending in this case. Specifically, there is presently pending a divorce action styled *Lowe v. Lowe*, Case No. 502011DR000215XXXXNB (FJ) in the Circuit Court in and for Palm Beach County, Florida (the "**Divorce Case**"), where the

parties are fighting over the ownership and control of Plaintiffs, Life Win, Inc., Get Motivated Seminars, Inc., and Wealth Magazine Investor Education LLC (collectively, the "**Companies**"). Nearly one year after the filing of the petition for dissolution of the marriage of Peter Lowe ("**Mr. Lowe**") and Mrs. Lowe, and just weeks before the family court could hear Mrs. Lowe's emergency motion to restrain the sale of the Companies, Mr. Lowe purported to sell the Companies to his associate, Joseph Johnson ("**Johnson**"), for significantly less than market value. Johnson, as alleged owner of the Companies, instituted this action one week later. The alleged sale to Johnson has been challenged in the Divorce Case. If this sale is deemed, as it should, a fraudulent conveyance of marital assets in the Divorce Case, this action cannot proceed because the Plaintiffs and their lawyers will have been without authority to file this action. The family court presiding over the Divorce Case has exclusive jurisdiction over marital assets and the determination of the Companies' ownership and control.

To avoid the possibility of inconsistent state and federal court decisions regarding ownership of the Companies, and to avoid contradictory relief embracing substantially the same issues, this Court should abstain from this case and Plaintiffs' Motion for Preliminary Injunction. In the alternative, the Court should stay the case pending determination of the ownership and control of the Companies. Even if the Court does not abstain, a preliminary injunction is not proper because the Companies cannot meet their high burden to prove each element necessary for a preliminary injunction. In the event the Court grants preliminary injunctive relief, the Companies should be ordered to post a bond for no less than $12 million.

- 2 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

## II. STATEMENT OF FACTS

### A. The Marriage of Mr. Lowe and Mrs. Lowe and Creation of the Companies

This case turns on the ownership and right to control the Companies, which will be decided in the Divorce Case. Mr. Lowe and Mrs. Lowe were married on May 9, 1987, almost twenty-five years ago. See Declaration ("Dec.") of Mrs. Lowe ¶ 2. During their marriage, the Lowes founded and operated the Plaintiffs, Life Win, Inc. ("**Life Win**"), and affiliated entities, Get Motivated Seminars, Inc. ("**GMSI**") and Wealth Magazine Investor Education, LLC ("**Wealth Magazine**"). Life Win operates as "GET MOTIVATED SEMINARS," and has provided educational and motivational seminars around the country for many years through its affiliated entities, GMSI and Wealth Magazine. *Id.* at ¶ 4. It is recognized in the industry as a leader of motivational seminars. The Companies are, by far, the parties' most valuable marital asset and have generated millions of dollars of income for Mr. Lowe and Mrs. Lowe. *Id.* at ¶ 5.

Life Win, Inc. is also the means by which Mrs. Lowe makes her livelihood. Dec. of Mrs. Lowe at ¶ 5. It is her passion and her creation. She has been instrumental in the success of the business. Indeed, throughout their marriage, Mrs. Lowe was promoted as the face of the Companies and *Get Motivated* seminars. *Id.* at ¶ 8, 9. She spoke at *Get Motivated* seminars for over 20 years, and authored a best-selling non-fiction work titled *Get Motivated!* (Random House 2009). *Id.* at ¶ 8. In the book and other materials distributed during their marriage, the Companies held Mrs. Lowe out as the co-owner, co-founder, Executive Vice-President and Chief Creative Officer of GET MOTIVATED SEMINARS, INC. *See* http://www.tamaralowe.com/default.aspx?code=profile and http://www.getmotivatedbook.com/ViewPage.aspx?code=about tamara lowe. *Id.* at ¶ 7.

At the time of Life Win's formation, Mr. Lowe lied to Mrs. Lowe that 50% of the stock of the Companies was issued in her name. Dec. of Mrs. Lowe ¶ 6. It was only during the dissolution proceeding that Mrs. Lowe learned that her husband lied and that 100% of the stock was held in Mr. Lowe's name alone. *Id.* at ¶ 6. In the Divorce Case, the circuit court will decide each party's interest in the Companies, who can control the Companies, and who should receive title to the stock of the Companies, a marital asset.[1]

B. **Mr. Lowe's Scheme to Defraud His Wife**

On January 6, 2011, Mrs. Lowe filed her Petition for Dissolution of Marriage. Dec. of Mrs. Lowe ¶ 3. In October 2011, Mr. Lowe voluntarily surrendered the Companies to Mrs. Lowe after stripping them of their operating capital. *Id.* at ¶ 10. Mr. Lowe then allowed Mrs. Lowe to operate the Companies for two months and use her own money to pay more than $2 million of company debt. *Id.* at ¶ 10. During this time, Mr. Lowe led Mrs. Lowe to believe that it was his intention to sell her his half of the Companies. *Id.* at ¶ 11.

Mr. Lowe even agreed to be bound by an Exclusive Dealings Agreement with Mrs. Lowe, which prevented him from negotiating the sale of his interest in the Companies to anyone else through December 12, 2011. Dec. of Mrs. Lowe ¶ 11. In early December, Mrs. Lowe came to the realization that Mr. Lowe was stringing her along and intended to enter into an agreement to allegedly sell the Companies to his shill, Johnson. *Id.* at ¶ 12.

To protect her interest, on December 13, 2011, Mrs. Lowe sent Johnson notice (the "**Notice**") that she held a 50% legal and equitable interest in the Companies by virtue of her marriage to Mr. Lowe, that she had full control of the Companies by virtue of Mr. Lowe's

---

[1] Pursuant to Fla. Stat. §61.075, the circuit divorce court can assign 100% of the stock of the Companies to Mrs. Lowe, and set aside the fraudulent sale, described below, to Joseph Johnson.

- 4 -

surrender of the Companies, that she did not consent to the sale of the Companies, and that any "purchase" of the business by Johnson would be subject to Mrs. Lowe's marital "lien" and superior interest. *Id.* at ¶ 12.

Notwithstanding the Exclusive Dealings Agreement, and the Notice, Mr. Lowe entered into an agreement to sell the Companies (the "**Stock Purchase Agreement**") with Johnson and his company, Booker T. Equity, LLC ("**Booker T.**"), for $21,750,000. The price is over $53 million less than a letter of intent ("**LOI**") previously received from an investor in mass market education, who offered to buy 75% of the Companies for $75 million. Dec. of Mrs. Lowe ¶ 13, 14. Clearly, Mr. Lowe and Johnson conspired to fraudulently transfer the Companies to try to get them beyond the reach of the divorce court, with complete notice of Mrs. Lowe's interest in the Companies.

Despite the alleged transfer, Mr. Lowe still retains control of the Companies through his designation as a $1 million a year "consultant," entitled to up to 50% of the profits and the return of the stock if Booker T. fails to meet financial obligations imposed under the Stock Purchase Agreement.

Throughout the dissolution proceeding, Mrs. Lowe has asked the Court to award her the Companies as part of the court's final plan of equitable distribution—a fact known to Mr. Lowe and Johnson before they entered into the Stock Purchase Agreement.[2] Since the purported sale, on January 18, 2012, Mrs. Lowe filed a Verified Motion for Temporary Injunction (With Notice) and a Supplement thereto, which was noticed to be heard in the Divorce Case on February 14

---

[2] *See* Florida Statute §61.075 (the Court has authority in the Divorce Case to award the Companies to either party, regardless of legal title); *Sandstrom v. Sandstrom*, 565 So. 2d 914, 915 (Fla. 4th DCA 1990)(marital assets are "under the Court's jurisdiction for purposes of an equitable distribution").

- 5 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

and 15. The divorce court has been asked to decide whether the sale of the Companies is void and whether Mr. Lowe should be enjoined from taking any action to sell the Companies, or otherwise dissipate funds belonging to the Companies. The divorce court has also been asked to decide whether to enjoin Johnson and Booker T. from taking any further action antagonistic to Mrs. Lowe's claim in Life Win (and its affiliates), pending final hearing. Dec. of Mrs. Lowe at ¶ 17. Johnson and Booker T. have been added, by agreement of parties, as third parties to the Divorce Case.

## III. ARGUMENT

### A. THIS COURT SHOULD ABSTAIN FROM THIS CASE AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**1. Abstention is Mandatory**

This Court should abstain from hearing this matter in order to avoid the possibility of inconsistent state and federal court decisions regarding ownership and control of the Companies, and to avoid contradictory relief embracing substantially the same issues. A federal court must abstain from hearing a case where a state court already has jurisdiction over the property at issue. "[W]here the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction." *Kline v. Burke Const. Co*., 260 U.S. 226, 229 (1922); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1251 (11th Cir. 2006) (citing *Kline*, 260 U.S. at 229)("'[T]he exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat' the federal court's control"); *United States v. $270,000.00 in U.S. Currency, Plus Interest*, 1 F.3d 1146, 1147 (11th Cir. 1993)("A state court and a federal court cannot simultaneously exercise in rem jurisdiction over the same property"). This is a mandatory jurisdictional limitation.

- 6 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

*Engineer of State of Nevada v. South Fork Band of Te–Moak Tribe of Western Shoshone Indians of Nevada*, 339 F.3d 804, 809–810 (9th Cir. 2003).

In this case, the Palm Beach Circuit Court became vested with jurisdiction over the marital assets of Mr. Lowe and Mrs. Lowe as soon as the Petition for Dissolution of marriage was filed. Fla. Stat. § 61.075. The divorce court is the exclusive forum for equitably dividing the assets between the parties, and to determine who should have control over the Companies. *Id*.; *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003). The divorce court will decide Mr. Lowe and Mrs. Lowe's marital interest in the Companies, whether the alleged sale of the Companies was fraudulent or lawful, and who should receive legal interest in the stock of the Companies. Fla. Stat. § 61.075; *Sandstrom v. Sandstrom*, 565 So. 2d 914, 915 (Fla. 4th DCA 1990)(while finding that marital assets are under the exclusive jurisdiction of divorce court, court issued restraining order preventing husband from transferring marital assets beyond the court's jurisdiction); *Gooding v. Gooding*, 602 So. 2d 615 (Fla. 4th DCA 1992)(abuse of discretion not to grant temporary injunction to maintain a status quo pending determination as to the extent of the wife's share in corporate assets of the parties). Because the *res* at issue- the Companies and the Companies' rights and interests in trademarks, trade secrets and contracts- is before the family court, this Court should abstain from exercising jurisdiction over the controversy. If the divorce court rules that the sale of the Companies is void, or that Mrs. Lowe owns the Companies, then Plaintiffs cannot prevail in this case. To avoid the possibility of inconsistent results, this Court should abstain from hearing this case and the Motion for Preliminary Injunction.

**2. Discretionary Abstention is Also Proper**

Even if mandatory abstention is not mandated, the court should exercise its discretion to hear this case and Motion for Preliminary Injunction. When relief sought is equitable or otherwise

discretionary, federal courts following abstention principles have discretion to either decline jurisdiction altogether by dismissing the action, or stay the action pending resolution of the state claims. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717–722 (1996). Although there are several abstention doctrines, "abstention doctrines are not 'rigid pigeonholes,' *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 11 n. 9, (1987), and the ultimate question is whether there are 'exceptional circumstances' in which abstention 'would clearly serve an important ... interest.'" *DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997).

**i. *Younger* Abstention**

Under the *Younger* abstention doctrine, a federal court may abstain from considering a case in favor of an ongoing state proceeding if the relief sought in federal court will interfere with a state proceeding. The United States Supreme Court has long held that the *Younger* abstention doctrine applies "to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982).

There are three factors to consider when determining if *Younger* abstention is appropriate: (1) is the matter before the federal court an ongoing state judicial proceeding; (2) do the proceedings implicate important state interests; and (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County Ethics Comm.*, 457 U.S. at 432.

In *Richard v. Fisher & Bendeck, P.A.*, 10-14110-CIV, 2011 WL 284455 (S.D. Fla. 2011), the court held that abstention was proper pursuant to the *Younger* doctrine because of pending divorce proceedings in state court. The court explained:

> "'In order to decide whether the federal proceeding would interfere with the state proceeding, we look to the relief requested and the effect it would have on the state proceedings.' In this case, Plaintiff's contentions notwithstanding, divorce proceedings necessarily deal with questions such as marital assets . . . If this

- 8 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

Court entertains Plaintiff's claims related to the marital home and child custody, it would interfere with the state court's ability to deal with the same issues. Accordingly, the Plaintiff is 'seeking relief that would interfere with the ongoing state dependency proceedings by placing decisions that are now in the hands of the state courts under the direction of the federal district court.'"

2011 WL 284455, *3.

In this case, the first *Younger* factor is met because the preliminary injunction sought is already the subject of an ongoing divorce proceeding. Mrs. Lowe sought an injunction to prevent Mr. Lowe from selling the Companies. Dec. of Mrs. Lowe at ¶ 16. The "sale" took place before a hearing on the matter could occur and is now subject to being set aside by the family court. *Id.* at ¶ 18. Clearly, ownership and control of the Companies are issues that must also be decided in this pending federal court case before granting or denying Plaintiffs' Motion for Preliminary Injunction.

The second *Younger* factor is met because the state divorce proceeding between the parties undoubtedly implicates an important state interest. Family relations are an important state interest. *Moore v. Sims,* 442 U.S. 415, 435 (1979) (requiring *Younger* abstention in case involving custody of allegedly abused children). The federal court's deference to state law in the area of domestic relations is so strong that the Supreme Court has recognized a "domestic relations exception" that divests the federal courts of power to issue divorce, alimony, and child custody decrees. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

The third *Younger* factor is met because all parties have an adequate opportunity to raise constitutional challenges and otherwise protect their rights in the ongoing state proceeding. Dec. of Mrs. Lowe ¶ 17. Following the fraudulent "sale" of the Companies, Mrs. Lowe amended her Petition for Dissolution of Marriage, adding Johnson as a third party liable for fraudulent transfer. *Id.* at ¶ 15; *Picchi v. Picchi*, 100 So. 2d 627, 629–30 (Fla. 1958) (in divorce proceeding,

it is proper to join "any third party claimants to property in which the husband and wife claim a joint interest"). Johnson will have the opportunity to raise jurisdictional, constitutional or legal challenges in the divorce case.

For the foregoing reasons, abstention pursuant to the *Younger* doctrine is appropriate.

### 2. *Colorado River* Doctrine

Federal courts can also abstain to exercise jurisdiction in the event that a state court has concurrent jurisdiction over the same subject matter. Under the *Colorado River* doctrine, "[i]n assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum . . . the desirability of avoiding piecemeal litigation . . .and the order in which jurisdiction was obtained by the concurrent forum." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 818-19 (1976).

To the extent that this Court finds that it maintains concurrent jurisdiction over some issues of the case, abstention is still appropriate. The Divorce Case was pending for more than one year before the sale of the Companies and before this case was filed in federal court. If this case proceeds at the same time as the state action, there is the risk of inconsistent rulings and piecemeal litigation. While Mrs. Lowe has asserted her position as rightful and legal owner of the Companies in the Divorce Case, Johnson has asked this Court to grant him relief as alleged owner of the Companies. If both Courts exercise jurisdiction, there could be inconsistent state and federal court decisions regarding ownership and control of these assets.

## B. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION SHOULD BE DENIED

A preliminary injunction is an extraordinary and drastic remedy which must be sparingly granted. *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983); *Bashman v.*

- 10 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

*Freda,* 805 F.Supp. 930, 932 (M.D. Fla. 1992). A preliminary injunction should not be granted unless the movant "'clearly carries the burden of persuasion' as to the four prerequisites.'" *Jefferson County*, 720 F.2d at 1519 (quoting *Authority v. Caliaway,* 489 F.2d 567 (5th Cir. 1974)). "The burden of persuasion is **at all times** upon the plaintiff." *Id.* (emphasis added). The burden does not shift to the non-movant until the movant has made a sufficient showing on each element for an injunction. *CBS Broad., Inc. v. EchoStar Communications Corp.*, 265 F.3d 1193, 1202 (11th Cir. 2001). "Such a burden-shifting model ensures that the party opposing a preliminary injunction is not saddled with the burden of production, initially, and that the proponent of this extraordinary and drastic remedy is required to clearly establish the burden of persuasion as to the four requisites." *Id*.

A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) *citing McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998). Where the granting or denying of an injunction turns on the resolution of bitterly disputed facts, an evidentiary hearing is required to decide credibility issues. *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989).

**1. Plaintiffs Have Not Met Their Heavy Burden to Prove a Substantial Likelihood of Success on the Merits**

  **i.    Johnson and his lawyers lack capacity and standing to pursue this cause of action on behalf of the Companies**

Plaintiffs cannot succeed on the merits of their claims because the purported sale of the Companies is null and void. The Stock Purchase Agreement is void, a nullity, and unenforceable, and was merely a scheme arranged by Mr. Lowe and Johnson to defraud Mrs. Lowe out of her interest in the Companies. Dec. of Mrs. Lowe ¶ 15. Because Mrs. Lowe, as owner, does not consent to the filing of this action and to the appearance of counsel on behalf of the Companies, the action should be dismissed and the motion denied. Moreover, because Johnson is not the true owner or representative of the Companies, he lacks capacity to sign an affidavit on behalf of the Companies to support the Complaint and Motion for Preliminary Injunction. Fed. R. Civ. P. 9(a) (allowing a defendant to challenge a party's capacity to sue).[3]

In their moving papers, Plaintiffs refer to a preliminary injunction that was entered by the state court to infer that they have a colorable claim in this case. The state court injunction was entered on an *ex parte* **basis** and the lawsuit voluntarily dismissed before the court considered evidence as to why the injunction should be dissolved. Thus, the fact that a state court issued an injunction should not sway the Court's consideration of the merits of the Plaintiffs' Motion for Preliminary Injunction.

---

[3] Clearly, Mr. Johnson is not a *bona fide* purchaser for value. Mr. Johnson knew of Mr. Lowe's and Mrs. Lowe's competing claims to the Companies, but proceeded to defraud Mrs. Lowe by allegedly purchasing the Companies, paying well below market-value. Dec. of Mrs. Lowe ¶ 12, 14. Mr. Johnson received notice from Mrs. Lowe of her claim to the Companies, but chose to disregard it. *Id.* ¶ 12. Under the circumstances, Mr. Johnson cannot be considered a *bona fide* purchaser.

- 12 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

**ii. The restrictive covenant is not enforceable**

Florida Courts regularly deny injunctive relief for the violation of a restrictive covenant where the employer has breached the employment agreement at issue. "In determining the enforceability of a restrictive covenant, the court, 'shall consider all other pertinent legal and equitable defenses. . .[a] party seeking a temporary restraining order must prove that the party has a clear legal right to the relief requested.'" *Benemerito & Flores, M.D.'s, P.A. v. Roche*, 751 So. 2d 91, 93 (Fla. 4th DCA 1999). In considering enforcement of a restrictive covenant, the Court must consider all legal and equitable defenses. *Id* at 93. Thus,

> [a] party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity.' 'Having committed the first breach, the general rule is that a material breach of the Agreement allows the non-breaching party to treat the breach as a discharge of his contract liability.' If the employer wrongfully refuses to pay the employee his compensation, the employee is relieved of any further obligation under the contract and the employer cannot obtain an injunction.

*Id*. at 93 (denying injunction where there was evidence the association breached agreement by "lessening" bonus due).

Here, Life Win, materially breached Forte's employment agreement. At the time of his termination, Life Win, Inc. owed Mr. Forte $5 million in profit participation and 15% of the stock, which it still has not paid. Dec. of Forte ¶ 4. No contradictory evidence has been presented. Thus, Plaintiffs have not demonstrated a clear legal right to the relief requested, or a substantial likelihood of success on the merits. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)(district court may only grant injunctive relief if the moving party meets its burden to show it has a **substantial** likelihood of success on the merits).

### iii. Plaintiffs have not met their burden to prove trade secrets were misappropriated

To show misappropriation of a trade secret under Florida law, "the plaintiff bears the burden of demonstrating the specific information it seeks to protect is a trade secret." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2006)(citing *American Red Cross v. Palm Beach Blood Bank, Inc.,* 143 F.3d 1407, 1410 (11th Cir.1998)). Classifying broad categories of documents and information as trade secrets without providing supporting evidence or testimony that specific items constitute trade secrets and were misappropriated is insufficient to meet the high burden. *Id.*

In this case, the affidavits filed by the Plaintiffs are conclusory and do not specify exactly what alleged "trade secrets" were converted. Thus, Plaintiffs have not met their burden.

### iv. The Companies acquiesced to the use of the trademarks and Plaintiffs' claims are barred by laches

The Companies have not met their heavy burden to prove Defendants' improper use of the "Get Motivated" mark.  Acquiescence prevents an owner of a mark from asserting rights against another whose use was consented. *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) (acquiescence "estops a senior user from asserting rights against a party for the use of the mark to which the senior user consented."). Acquiescence is established if it is shown that "(1) the [complaining party] actively represented that it would not assert a right or a claim; (2) that the delay between active representation and assertion of the right or claim was not excusable; and (3) that the delay caused [the defendant] undue prejudice." *Id.* at 1344.  Similarly, laches will also bar a claim where there is a showing of "(1) a delay in asserting a right or a claim, (2) that the delay was not excusable, and (3) that there was undue prejudice to [Defendants] against whom the claim is asserted." *SunAmerica,* 77 F.3d at 1347.

- 14 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

In this case, the Companies promoted Mrs. Lowe, and Mrs. Lowe promoted herself without any objection, as the face of the "Get Motivated" brand for many years. Dec. of Mrs. Lowe ¶ 7–9. Mrs. Lowe appeared as a speaker at "Get Motivated" seminars for twenty years. *Id.* ¶ 8. Mrs. Lowe's New York Times Best Seller book titled *Get Motivated!*, which was published in 2009, promotes Mrs. Lowe's use of the mark. *Id.* ¶ 8. The Companies' own promotional materials, produced before the Petition for Dissolution was filed pictures Mrs. Lowe next to a caption stating that she "is the co-founder and Executive Vice President of Get Motivated Seminars, Inc." *Id.* ¶ 7. Because the Companies have acquiesced to Mrs. Lowe's use of the marks, or failed to assert their exclusive right to use the marks, in a timely manner, they are estopped from doing so at this time. *Id.* ¶ 7–9.

### 2. Plaintiffs will Not be Irreparably Harmed and Have an Adequate Remedy at Law

An injury is irreparable only if it cannot be undone through monetary remedies. *Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir. 1987) (citing *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir. 1983)). As one court stated:

> The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir. 1983).

In the context of infringement, it has been said that allegations of irreparable injury cannot be sustained in the face of a plaintiff's own delay in seeking emergency injunctive relief. As Professor McCarthy explains, "[d]elay in seeking a preliminary injunction tends to neutralize any presumption that infringement alone will cause the irreparable harm pending trial." 5. J Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 30:49 (2006); *see also*

- 15 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

*Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F. Supp. 602, 609 (S.D.N.Y. 1979)("Delay of this nature [one year] undercuts the sense of urgency that ordinarily accompanies a motion for preliminary injunctive relief and suggests that there is, in fact, no irreparable injury").

Clearly, this lawsuit was filed as a means to obtain leverage in the Divorce Case. No evidence has been presented that the Companies will be irreparably harmed. Johnsons' affidavit, the alleged owner and officer of the Companies, which is inadmissible because he lacks capacity to act for the Companies, merely avers that the Companies have been "damaged" and their ability to conduct business has been "significantly impaired." Dec. of Johnson ¶ 5. This is not sufficient to meet the burden for a preliminary injunction. *Jefferson County*, 720 F.2d at 1520 (mere injury, however substantial, is not enough to support injunction).

Furthermore, the delay in enforcing relief itself evidences that irreparable harm does not exist. The Companies previously obtained an injunction against Defendants, but **voluntarily** dismissed their state lawsuit and dissolved their injunction. Dec. of Mr. Lowe ¶ 28-29. The Companies would not have dismissed their lawsuit and dissolved their injunction if they were being irreparably harmed. Moreover, despite the alleged harm from on-going competition from Defendants, the Companies were sold for $21,750,000. The Stock Purchase Agreement further provides a price adjustment if Defendants continue to compete with the Companies. Paragraph 2(b)(i) of the Stock Purchase Agreement provides for price reduction of $10,000,000 if Defendants continue to compete and do not return the property allegedly converted. The fact that Mr. Lowe and Johnson agreed to a specific mathematical price adjustment if competition from Defendants continues evidences an ability to compensate for the alleged harm caused by Defendants.

- 16 -

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L.• MIAMI CENTER, SEVENTEENTH FLOOR, 201 SO. BISCAYNE BLVD., MIAMI, FL 33131•
305.379.9000

**3. The Injury to Plaintiffs, If Any, Is a Result of their Own Error, and is Heavily Outweighed by the Harm That Defendants Will Suffer if an Injunction Issues**

Johnson was on notice of Mrs. Lowe's interest in the Companies before purchasing them. Dec. of Mrs. Lowe ¶ 12. He was fully aware of the underlying divorce action, and Defendants' competition. Despite full knowledge of these facts, Johnson entered into a Stock Purchase Agreement which provides for a reallocation of the purchase price if competition continued.

If the Court were to grant the Companies' request for an injunction, the cost to Defendants would be greatly outweigh the harm to Plaintiffs. Mrs. Lowe would be deprived of her primary marital assets and an equitable distribution by the divorce court. TAM would have to cease operations of their business. As further illustrated in the Declaration of Brian Forte, TAM stands to lose approximately $11 million in profits if the Defendants were forced to cease operations. Dec. of Forte ¶ 8. TAM's employees would lose their jobs. While Plaintiffs allege a "business disruption" if an injunction does not issue (Dec. of Johnson ¶ 5), TAM will be completely shut down. The balance of harms tips decidedly against Plaintiffs so that the Court should not grant the preliminary injunction.

**4. The Public Interest Would Not be Served by Divesting Mrs. Lowe of her Primary Marital Asset**

The public interest is not served by divesting Mrs. Lowe's marital interest before a proper determination by the divorce court. To the contrary, the public interest is most protected by allowing divorce proceedings to take their course and prevent unscrupulous parties from interfering with these proceedings.

## C. IF THE COURT ISSUES A PRELIMINARY INJUNCTION, THE PLAINTIFFS MUST POST A VERY LARGE BOND

An injunction cannot issue without a sufficient bond. Fed. R. Civ. P. 65 (c). As the Supreme Court has recognized, without a security bond, the wrongfully enjoined party has no recourse for damages incurred while wrongfully enjoined. *W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 770 n.14 (1983) *accord Milan Exp., Inc. v. Averitt Exp., Inc.,* 254 F.3d 966, 981 (11th Cir. 2001). The appropriate amount of an injunction bond is the cost and damages associated with the defendant's deprivation of what, but for the injunction, it would have had a legal right to do. *Mead Johnson & Co. v. Abbott Labs.,* 201 F.3d 883, 887-88 (7th Cir. 2000). "When setting the amount of security, **district courts should err on the high side**… [because] an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id*. at 887-88; see also, *Bebe Stores, Inc. v. May Dept. Stores, Inc.,* 230 F.Supp.2d. 980 (E.D. Mo. 2002) (factoring in costs of rebranding and setting $3 million bond on trademark preliminary injunction that required enjoined party to re-brand).

In the event that the Court finds that the issuance of a preliminary injunction is proper in this case, Plaintiffs should be compelled to post a bond for no less than $12 million. Pursuant to the declaration of Forte, TAM expects to earn approximately $11 million this year, while Forte will earn $ 1 million. If an injunction issues, Defendants will lose this income. Therefore, a bond for at least $12 million would be appropriate.

## V. RELIEF REQUESTED

WHEREFORE, Tamara Lowe, Brian Forte and Take Action Media, Inc. respectfully requests that the Court enter an order denying Plaintiffs' motion for preliminary injunction, awarding Defendants all attorney's fees and costs, and granting such other and further relief deemed proper.

> KLUGER, KAPLAN, SILVERMAN, KATZEN
> & LEVINE, P.L.
> *Attorneys for Defendants*
> Miami Center, Seventeenth Floor
> 201 So. Biscayne Blvd.
> Miami, Florida 33131
> Telephone: (305) 379-9000
> Facsimile: (305) 379-3428
>
> By:   s/ Alan J. Kluger
>    ALAN J. KLUGER
>    Fla. Bar No. 200379
>    akluger@klugerkaplan.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on **Christopher L. Griffin, Esq.,** FOLEY & LARDNER LLP, 100 North Tampa Street, Ste. 2700, Tampa, Florida 33602, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    /s Alan J. Kluger